Good morning. May it please the court. Alex Little on behalf of Appellant Navarro. I'd like to request three minutes for rebuttal. This case is in both incredibly narrow and incredibly broad. Let me tell you first why it's narrow. The question before the court is whether de novo, paragraph 49H of the indictment, sufficiently charges a scheme to defraud or a legal fact that can suffice to put a scheme to defraud under the healthcare fraud statute. It is that narrow because under the conditional guilty plea, the government has agreed to allow my client to appeal the narrow question of whether on a partial motion to dismiss, that type of allegation is sufficient to create a 20-year sentence under the healthcare fraud statute. It is broad because it implicates due process principles about what are the to allege criminal activity. That goes to your vagueness argument. It does. So on the vagueness argument, can you address, I mean as I counted it up, we have four or five other circuits that have all said, rejected that argument. Well I don't think they've rejected this particular argument. I think it depends on how... They've rejected the argument that it's unconstitutionally vague. You're going to tell me now why you're raising an argument that they haven't considered. Yes, in particular. So let me give you an example to sort of defeat the hypothetical. If the indictment said here in paragraph 49H that it was medically necessary, that it was not medically necessary, and because COVID tests required a doctor's order, and then you had regulatory guidance that said actually in fact the same regulation we have here, you don't need a doctor's order for a COVID-19 test. That would still be dismissed at the rule 12, at the motion dismissed rule 12 stage, and it could be done because it doesn't sufficiently meet the legal standard. It's not a vagueness argument. I'm having a little trouble hearing you, if you can get a little closer to the mic. Yes, so let me sort of walk through that again. Just the last part. Yes, so with respect to the rule 12 issue, if for example the allegation was this was not medically necessary because there was no doctor's order. We have regulatory guidance which says in fact you don't need that sort of doctor's order. You wouldn't stop at the health care statute to silly stop and say have they sufficiently alleged it that they said it was medically necessary when there's direct regulatory guidance to the opposite. So the next question is if that aspect of due process applies, why would vague does not apply to that secondary question of what the regulatory guidance is? So here it is clear that COVID-19 was permitted without a doctor's order and without asymptomatic guidance. If the indictment had only alleged a failure to do those things incorrectly as a matter of law, this court would certainly look at that regulation to A3 and say you can't sustain the indictment. But isn't that sort of wrapped up in the scienter part? So they say the indictment alleges knowingly and willfully, or may not be will, knowingly and intentionally violated. Doesn't that address the concern that you're talking about? Many of the courts got around the problem. I think the issue here is the question of falsity. And if it cannot be legally false, it's hitting another element, which is whether or not the representation itself is false. You could have allegations and indictments that an individual believed something to be false. They believed it to be illegal. But if the falsity element as a matter of law couldn't be sufficiently proven by the government's burden, the indictment cannot be sustained. So I think in many of the cases where the health care fraud statute is implicated, there's a question of medical necessity based on facts. And they say, well, this is a factual question. And the falsity scienter allegation helps us determine that we get over that part of the burden. It helps us sort of get over that factual hump. It doesn't solve the legal hump. And I think here the legal hump is that you've got in subsection A3 of the revised guidance a statement that says that... Well, no, but don't you just argue to the jury then that this person did it knowingly or intentionally? Because look at this language. They thought under this language they could do this. And so you can't find beyond a reasonable doubt that they knowingly violated the statute. Judge Cole, I could certainly argue that. My client shouldn't have to bear the burden of that trial if it's not legally possible. And so it does give a whole host of defenses to defendants to argue that the scienter, they're not aware of the legal nullity or the legal issue. The question the government has is whether it's actually alleged a legal nullity or a legal sort of conflict here. And I'll go back to the example. If the government had just alleged in that paragraph 49H, this is not medically necessary because you don't have a doctor's order. And the regulatory guidance says we don't need doctor's order. Scienter wouldn't save them. And so we're in the same place except the argument is slightly slanted. We're now talking about RPPs. RPPs, the respiratory panels, are discussed in the same guidance. And they are said, if COVID's allowed, you can test this. And the language that otherwise covered, the government has pointed to, I think is notable. Their response is, well, it says otherwise covered. You've got to incorporate all the standards that includes medical necessity. The problem with that is that same language is used at the beginning of the sentence and the end of the sentence. It's used for COVID-19 when we know that a medical necessity does not require a doctor's order under the public health emergency. Why in the world, using basic statutory construction terms, would the HHS require a different interpretation of otherwise covered for the RSV and influenza tests? We think that resolves the question, indicates that it's at least on its face legally permissible to do this testing. And I want to take a step back. This is a laboratory. You have in your record, the government has conceded every test that was billed was done. These are real patients, real nasal swabs. The tests were put into a machine that was approved by the FDA to do multiple pathogen tests. That FDA approval says they can be done with COVID tests, RSV, and influenza. And the reason for that is because we want to know whether something isn't COVID. There was hysteria. There was concerns about the growth. If we can say something's RSV or influenza, we have a better sense of containing the COVID itself. That's FDA guidance that flows from the same regulatory scheme. Hold on. I understand the explanation you're making in theory, but the facts here are very different from that. He was, I mean, wasn't there evidence that he was going around or that, you know, the indictment alleges he was going around and coming up with tests that didn't need to be done and bilking millions of dollars. Two things about that. Mike Klein's the wife, the husband, so she was not doing those things. But there is an allegation about kickbacks. There's an allegation about other aspects which make it fraudulent that are not in 49H and are not an aspect of the appeal. I think I was not the trial attorney. If we go back, I think we have factual defenses to those that we would feel very confident to be able to defeat at trial. The reason the conditional partial motion to dismiss was, you have an allegation that the tests were done without medical orders for the RPP panels. It drastically changes the scope of trial and what my client is facing if that is allowed to go to the jury. The motion was a motion for jury instructions and to partially dismiss these types of things. Because as Judge Cole knows, the scope of these allegations at trial mattered demonstrably as to how I'm going to argue a case to the jury. So there are all sorts of other factual allegations that are not an issue here, and the government actually can appeal, I mean, can take at trial if that becomes an issue. Which is why I go back to the narrow question here. Is whether 49H permitted or alleged sufficiently the crime of healthcare fraud to subject my client to 20 years in prison? We don't think particularly under A3 the guidance does that. A3 says in two different places that you can do simultaneous testing for RSV and for influenza when you test for COVID. We know that you can test for COVID on populations, what we're here, mostly nursing homes, without a doctor's order. I think my time is up. Well, if you want to reserve, you still have time.  Okay, thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Dave Lieberman for the United States. The District Court correctly denied the pretrial motion to dismiss. Here, I'll start with the indictment sufficiency challenge. We had to allege a scheme to defraud. That element is in the indictment, and then the indictment supported that with factual allegations regarding medical necessity. Those allegations were more than sufficient to clear the really minimal standard under Rule 7, a short and plain statement of the crime alleged. So I think Judge Nelson was asked a question, and I think he was getting at, if I understand correctly, that these were not people who come in, they've got some illness, and you do a COVID test, and then you do another test because you're trying to figure out what's causing their respiratory problems, which makes sense to me. These are asymptomatic people that were just getting, you know, there's a ton of those people getting COVID tests. I'm sure I got some. And then they're just tacking it on, which doesn't seem to make a lot of sense. And then I think, as I understood your opposing counsel's argument, while those are some facts that aren't really at issue in this appeal, but what is the state of play of that? Because I thought that was pretty significant, that whether or not it's medically necessary to do these other tests when you're testing asymptomatic people. Yes, let me read to you the exact language from the indictment. This is at ER 339, paragraph 49H. The allegation of lack of medical necessity is that these tests were not medically necessary, it was not medically necessary to conduct these respiratory pathogen panel tests on asymptomatic individuals who were being screened for COVID-19 infections. That is the allegation that underpins the fraud scheme that we're talking about today. That was enough. That is a factual allegation, a lack of medical necessity, undergirding the scheme to defraud and get us past the Rule 7 pleading stage. All of the other points that counsel has discussed and have raised in some of the defense briefs about what did guidance say or not say during this time goes to the factual question that the government would have to prove at trial. Medical necessity may go to Sienter and may, in fact, support other defenses. Yeah, as I understand it, generally their argument seems to be, and I guess Henri Buddley can correct me if I'm wrong, is that the regulations basically open the door saying that these other tests are medically necessary, or at least that's an interpretation that his client was allowed to make. But do I understand correctly that the regulations actually explicitly said it still has to be medically necessary? Not quite, Your Honor. Let me break it down. I think there's a legal portion and there's a factual portion. The legal claim that I understand Ms. Navarro to be making on the point is that these panel tests were medically necessary as a matter of law. And our response to this is the Medicare regulation at issue 410.32.83, as the district court found, has nothing to do with medical necessity. The regulation removed the doctor's order requirement. Okay, so it makes it, you say the Medicaid regulations, the regulations that were enacted in response to COVID that he's saying open the door to let... Yes. And this is what the district court looked at the regulation and said this regulation is about removing the doctor's order requirement. So the court said that, but did the... I had it in my head that somehow the regulation actually said that. In the rulemaking where they published the rule, HHS says in the rulemaking, this is May 2020, that the medical necessity requirement is statutory. That's true. It comes from Title 42 of the U.S. Code. It cannot be waived. And that makes sense on the legal landscape. If medical necessity is a statutory requirement, the regulation cannot somehow extinguish it. And so the only... Everything else then I think becomes a factual dispute for trial. If this regulation is irrelevant to the medical necessity dispute that we're having, then these tests, the dispute about medical necessity is a factual dispute for trial. That goes to, I think, Judge Cole's question, that perhaps at trial the defense could come in and say, well, a reasonable person or my client read this regulation about doctor's orders and thought maybe this bore on medical necessity somehow. And for that reason, I lack the scienter necessary under the healthcare fraud statute. That would be a perfectly permissible trial defense. But litigating the question of factual... This factual question... I think maybe I'm misunderstanding your colleague's argument, but I thought their argument was that the phrase medical necessity in the indictment just had so little semantic content that you couldn't even tell what you were being alleged to have done. It would be as though it said in 49H, and you've committed medical jabberwocky. And you're like, I have no idea. I don't even know how to prepare a defense. There's so little semantic content to the phrase that I don't know what I'm charged with having done. I disagree with that. In the language that I cited, that we're having a dispute in paragraph eight, it is the medical necessity related to conducting these respiratory panel tests. There are like 17 or 18 different tests. For asymptomatic individuals. On asymptomatic patients. All that was in the indictment. Those facts. Yes. ER 339, and then it's repeated in the subsequent subparagraphs. That is enough to get us to trial. And your theory is that is not medically necessary. You would have to prove at trial that their client had scienter that knew or acted willfully and disregarded the fact of whether these were medically necessary or not. A hundred percent correct, your honor. And I take their theory to be something about this regulation essentially made medical necessity, essentially decided the medical necessity question. Or I suppose it could be that it muddied everything up so much that it created a vagueness challenge. I think you got it right, your honor. The first level claim that I believe they made is that these were medically necessary as a matter of law because of this regulation. The district court correctly parsed that regulation and said nothing in this regulation deals with medical necessity. So that legal, that first claim, which I understand to be a legal claim, fails. Then there's this backup factual claim. It created so much confusion among providers and labs that I couldn't have the requisites to answer. That is a jury question. We litigate questions about intent at trials, not in pretrial motions to dismiss. The district court properly, as the reviewing court, took this allegation, lack of medical necessity with regard to these panel tests as to asymptomatic populations. The district court was required, as this court is required, to accept that factual allegation as true for purposes of a motion to dismiss the indictment. I'll just shift briefly to the vagueness point. I think my top line response to that is, Judge Cole, your point that because of the scienter element in the health care fraud statute, concerns about vagueness and fair notice wash away because the government would have to prove at any trial that the defendant knew that the tests or services were medically unnecessary. We cited the Ostenser case. This court has a number of cases noting that when there is a... How would you prove it? That is the slightly sympathetic aspect of this case, is that the hundreds of millions of dollars is not particularly sympathetic. If you're sitting here and you're saying, man, I think I should do these tests, but boy, what if a jury was to think that they weren't necessary? What would the proof the government put on to say, not only did you do these tests that we've got these three experts that say aren't medically necessary, but you knew they weren't medical. How would you prove that? We don't think that this is the proper subject of a motion to dismiss, but we previewed our... It goes to the vagueness issue. You see what I'm saying? How you would prove it might be whether I think it's vague or not. We charted out all of our evidence on the district court docket number 133, our trial brief, and as to see enter, we intended to do evidence that Ms. Navarro solicited the nursing homes and schools for COVID-19 screening. Part of it would be her actions, and I suppose part of it would be just like nobody could think that testing, I don't know what the numbers were, but it had to be a bunch of these tests. Basically, batch testing asymptomatic people is somehow medically necessary, adding a test. The whole purpose of this test is to... You have these respiratory issues. We're trying to figure out if you have COVID. If you don't have... If your COVID test comes back negative, but your flu test comes back positive, then we're like, oh, he has the  Yeah, exactly right, Your Honor. We intended to introduce evidence on both fronts, both of what her actions, namely that her lab was adding these extra tests. We had nursing home administrators and physicians to testify that they told the lab, we only want COVID-19 screening. We have not authorized these other tests, and we also intended to use evidence that the manufacturer of this pathogen panel testing had advised Navarro that the tests should not be used for COVID-19. So you weren't alleging the COVID-19 testing itself was fraudulent. It was the addition of the other tests? Yes. I'm not a virologist, but as I understand that these pathogen tests, it was a multitude of tests far beyond COVID or flu. I think it was something like 17 or 18 respiratory tests. So that is the type of evidence that we would put at trial, in addition to expert testimony about medical necessity, as well as the doctors who authorized or ordered these tests from the schools or the nursing homes. That's again at District Court Docket Number 133, if you want to review it. My red light is on. Unless the court has any further questions, the government asks that it be confirmed. Thank you, Your Honors. We have time for a rebuttal now. Your Honors, there are two factual things which are critically important to understand this. These are not separate tests. This is one nasal swab per patient. It's put into a machine with that sort of thing of snot. They can then process. But you charge more for checking for the other? There were 21 tests. They charged for three. The three that were on the chart, and it's in your, it's cited in the CPT codes which were allowed. Only those two were charged. CMS said you could charge them with COVID. The second piece is this was population testing at a nursing home. So it wasn't done just to determine, hey, does this person have COVID? It was required by the federal government and the state of California to do testing on visitors, workers, and patients because there was concerns about asymptomatic threat. It wasn't required to charge for all, for three different tests? No, I mean, so I think the question is, yeah, so is it required to charge? You don't have to charge for anything. They could have done it for free. The question was, you have to I mean, all three tests weren't required. The COVID was required. Well, all three weren't required to be billed for. So there's two different ways to test. You can do a single test and a single swab. You can do a multi-panel test. These are multi-panel tests. They're faster. Nursing homes want them because they get the results back in an hour as opposed to 12 hours. So that's a fact. My understanding was the allegation was the nursing homes weren't asking for them, right? Like they were asking for COVID tests. They were saying, here's our swabs. Give us our COVID results back. And they were getting results with the COVID results. And they're saying, by the way, this patient actually doesn't have COVID. They have RSV. This patient doesn't have COVID. They actually had influenza. But a lot of them didn't have anything. It's hard to sound like you're basic. There's just some tension with that with what was in the indictment. What they were saying is, hey, good news. Your patient doesn't have anything in the vast majority of cases because these are asymptomatic people being tested. And I think it strikes normal people that that seems unreasonable. But CMS said specifically, and this is on page 15 of the brief, because the symptoms for coronavirus, influenza, and concurrent testing for all three viruses. You mean the asymptoms? You mean when people don't have any symptoms, it's often the same? Yes. I'm being a little sarcastic. That's the problem. Exactly. That makes sense. When the symptoms are the same, then you have to do a panel of tests to figure out which one you have. When you have no symptoms and you're just checking, does this person happen to have really early stages of COVID? Or does this person have an asymptomatic COVID person that could give it to somebody else? What is the reason for doing these other tests? That does not, to my mind, justify as a reason. Well, so I guess the question is, where does the reason come from? Generally, when you have health care statutes and health care fraud, the reason comes from a physician. You can't just say, hey, by the way, I want this test. A physician has to order the test. And the core aspect of this appeal is that the FDA removed that entirely in A3. And so I agree. Maybe it would be better to say, here's the sort of tests I want if the business officer... Well, they did. They did. They said test these people for COVID. That's what they said. Right. But it's not a doctor. And so the question is, that's a different allegation of fraud. That's an allegation that... But I guess for me, I'm still struggling with, I get this all as an argument to the jury if you went to trial, but why is it a defect in the indictment? I mean, she knew what she was charged with. If the purpose of the indictment is to allow you to prepare your defense, she knew what the trial was going to be about. And it sounds like there are arguments that could be made to the jury about the knowing and intentional part, but she knew. The last piece I want to point out is, what would she then say in a defense? And you asked this question of government's counsels. How would she defend against this? Medical necessity in every health care fraud case you've ever seen in the Ninth Circuit generally looks at the medical records of the patient. Does this patient have symptoms? Does this patient deserve this sort of treatment? Is there a physician who said these sorts of things? Does the patient exist? EMS changed the rules in D1 of the same regulation, sorry, D2I, that said that the tests in A3, which is the whole statute we've been talking about, do not require a physician to maintain any documentation of medical necessity. So how would a lab ever know medical necessity without documentation? And so this is a completely different issue than if they had alleged, hey, they asked for stuff and they didn't get the stuff they wanted. That's not a medical necessity question. Medical necessity here has to be determined on some sort of allegation that there were symptoms. This person had runny eyes. This person looked to have a cough. They removed the... But that wasn't, let me get back to, we got way over, but that wasn't the issue here at all because that's why the asymptomatic aspect is so important. In order to prove medical necessity or in order to, you would have to say, or in order for her to say, well, I thought these are medical, she would have to have some basis to say when we're doing just regular COVID tests on people that are asymptomatic, it totally made sense to me to do, aside from the money involved, it totally made sense to me to do a whole bunch of other panel tests and check them for a broken leg, right? I would totally agree, except the combination of those two things. When it references A3, it says you don't have to keep any records. We don't expect you to have any records when you test for COVID. But it's not a record issue because these people are asymptomatic. It's more like you have to make the argument as a theoretical argument that it makes sense to test everybody who is asymptomatic for everything, not just COVID. And she could have done that. She could have done that, and maybe the jury would have agreed with it, but it doesn't seem to me like it's a defect in the indictment, and it doesn't seem to me like it means it's vague. I'm just struggling. I'll end on this. That would be true, but they included specifically in A3 that you could test for a diagnostic laboratory test for influenza virus or a similar respiratory condition. Why include that language if you're not permitting folks to do exactly what was done here? If they hadn't had it, it's totally gone. I agree. They included that. You can't then put somebody in jail for 20 years because that condition is unclear and not clearly defined. Okay. We have the arguments. Thank you to both counsel for your arguments. The case is now submitted.
judges: NELSON, VANDYKE, Cole